In the Matter of the Appraisal, under the Transfer Tax Act, of the Estate of FRANCIS B. COOLEY, Deceased.

CHARLES P. COOLEY et al., as Executors of FRANCIS B. COOLEY, Deceased, et al., Appellants; THE COMPTROLLER OF THE STATE OF NEW YORK, Respondent.

TRANSFER TAX — STOCK OF BOSTON AND ALBANY RAILROAD COMPANY OWNED BY NON-RESIDENT TESTATOR NOT ASSESSABLE AT ITS FULL VALUE. For the purpose of imposing a transfer tax upon stock of a non-resident testator in the Boston and Albany Railroad Company (a consolidated corporation separately created and organized under the laws of the state of New York and the state of Massachusetts, whose principal offices and the greater part of its lines are situated in the latter state), the valuation of the stock should be based upon an apportionment of the property between the New York and Massachusetts corporation; the stock should be appraised, not at its full value, but at a value representing the property of the corporation within this state, and a proper proportion of that situate outside of either state and moving (as in the case of rolling stock) back and forth between both states; such a method avoids double taxation, is equitable and just, and there is nothing in the statute or decisions thereunder requiring a tax measured by the full value of the stock in each state upon the theory that the corporation in that state owns all the property of the consolidated company.

*Matter of Cooley*, 113 App. Div. 388, reversed.

(Argued June 6, 1906; decided October 16, 1906.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered May 11, 1906, which affirmed an order of the New York County Surrogate's Court assessing a transfer tax upon the estate of Francis B. Cooley, deceased.

The facts, so far as material, are stated in the opinion.

*Charles P. Howland* for appellants. Under section 220, subdivision 2, of the Tax Law, so much of the interest of the decedent in the Boston and Albany railroad as derives its value from franchises and properties owned and operated in another state by virtue of the charter granted by another sovereignty is not "property within the state" and is not within the scope of the act. (*Matter of Bronson,* 150 N. Y. 1; *Matter of James,* 144 N. Y. 6; *Matter of Whiting,* 150 N. Y. 27; *Matter of Houdayer,* 150 N. Y. 37; *Matter of Clinch,* 180 N. Y. 300; *Matter of Daly,* 100 App. Div. 373; 182 N. Y. 524; *Matter of Plummer,* 30 Misc. Rep. 19; 161 N. Y. 631; *Plummer* v. *Coler,* 178 U. S. 115; *Bristol* v. *Washington County,* 177 U. S. 133; *Matter of Palmer,* 183 N. Y. 238; *Richardson* v. *V. & M. R. Co.,* 44 Vt. 613; *State* v. *N., etc., R. Co.,* 18 Md. 193.) The act, if construed to include that part of the value of the decedent's interest in the Boston and Albany Railroad Company represented by the Massachusetts franchise and properties, imposes a tax upon the transmission of personal property located out of the state and is taxation without jurisdiction. It, therefore, deprives the taxpayer of his property without due process of law, and also denies to him the equal protection of the laws. (*St. Louis* v. *Ferry Co.,* 11 Wall. 423; *D., L. & W. R. R. Co.* v. *Pennsylvania,* 198 U. S. 341; *U. T. Co.* v. *Kentucky,* 199 U. S. 194; *Pullman Case,* 141 U. S. 18; *W. F. Co.* v. *East St. Louis,* 107 U. S. 365; *Plummer* v. *Coler,* 178 U. S. 115; *People* v. *E. T. Co.,* 96 N. Y. 387; *L., etc., Bank* v. *Block,* 117 Fed. Rep. 900.)

*Charles M. Russell* for respondent. The Boston and Albany Railroad Company is a domestic corporation of the state. (Wells on R. R. Corp. 16–24, 204; *People ex rel. Sage* v. *L. S. & M. S. R. R. Co.,* 70 N. Y. 220; *Boardman* v. *L. S. & M. S. R. R. Co.,* 84 N. Y. 181; *People* v. *N. Y., C. & St. L. R. R. Co.,* 61 Hun, 66; 129 N. Y. 474; *Janes* v. *F. R. R. Co.,* 50 Hun, 310; *Matter of B. & A. R. R. Co.,* 53 N. Y. 574; *St. L. & S. F. R. R. Co.* v. *James,* 161 U. S.

562; *People* v. *Rice*, 57 Hun, 487.) The stock of the Boston and Albany Railroad Company owned by decedent at the time of his death is "property within the state" under the provisions of subdivision 2 of section 220 of the Transfer Tax Law, and as such was properly assessed herein. (*Matter of Palmer*, 183 N. Y. 238; *Matter of Bronson*, 150 N. Y. 1; *Matter of Whiting*, 150 N. Y. 27; *Matter of Romaine*, 127 N. Y. 80; Cook on Corp. [5th ed.] 1205; 1 Thomp. on Corp. § 395; *Jermain* v. *L. S. & M. S. R. R. Co.*, 91 N. Y. 492.) The fact that a shareholder claims for the corporation incorporation in another state also, does not sufficiently alter the facts as to disturb in the slightest degree the well-settled rule of law above stated. The corporation remains a corporation incorporated under the laws of this state, and as such the property therein, represented by shares of stock, is taxable in transfer or succession. The location of the transfer office is not material. (Wells on R. R. Corp. 204; Baldwin's Am. R. R. Law, 17; *People ex rel. Sage* v. *L. S. & M. S. Ry. Co.*, 70 N. Y. 220; *Janes* v. *F. R. R. Co.*, 50 Hun, 310; *Boardman* v. *L. S. & M. S. R. R. Co.*, 84 N. Y. 181; *People* v. *N. Y., C. & St. L. R. R. Co.*, 129 N. Y. 474; *Bishop* v. *Brainard*, 28 Conn. 298; *Moody* v. *Shaw*, 173 Mass. 375; *Matter of Bronson*, 150 N. Y. 1; *St. L. & St. F. R. R. Co.* v. *James*, 161 U. S. 562; *Graham* v. *B. H. E. R. R. Co.*, 118 U. S. 169; *Clark* v. *Barnard*, 108 U. S. 436; *Stone* v. *F. L. & T. Co.*, 116 U. S. 307; *C. P. R. R.* v. *California*, 162 U. S. 91.) The scheme of stock valuation proposed by appellants is absolutely prohibited by statute. If followed it could be set aside as creating an unwarranted discrimination between domestic corporations. It would also unfairly discriminate in favor of a non-resident and against a citizen of this state. (L. 1891, ch. 34; *Matter of Ottendorfer*, N. Y. L. J. Jan. 14, 1903; *Matter of Gould*, 19 App. Div. 352; *Matter of Gould*, 156 N. Y. 423.)

Hiscock, J. The appellants complain because in fixing the transfer tax upon certain shares of the capital stock of the

Boston and Albany Railroad Company which belonged to the estate and passed under the will of the deceased who was a non-resident, said stock has been appraised at its full market value as representing an interest in the property of said corporation situate both in the state of New York and elsewhere. It is insisted by them that under the peculiar facts of this case the valuation placed for such purpose upon the stock should not have been predicated upon the idea that the latter represented an interest in all of the property of said corporation, but should have been fixed upon the theory that it represented an interest in only a portion of said property.

I think that their complaint is well founded and that the order appealed from should be reversed and the assessment corrected accordingly.

The Boston and Albany Railroad Company is a consolidation formed by the merger of one or more New York corporations and one Massachusetts corporation. The merger was authorized and the said consolidated corporation duly and separately created and organized under the laws of each state. It was, so to speak, incorporated in duplicate. There is but a single issue of capital stock representing all of the property of the consolidated and dual organization. Of the track mileage about five-sixths is in Massachusetts and one-sixth in New York. The principal offices, including the stock transfer office, are situated in Boston and there also are regularly held the meetings of its stockholders and directors. The deceased was a resident of the state of Connecticut and owned four hundred and twenty-six shares of the capital stock, the value of which for the purposes of the transfer tax was fixed at the full market value of $252.50 per share of the par value of $100.

The provisions of the statute (L. 1896, ch. 908, § 220, as amd. L. 1897, ch. 284, § 2), authorizing the imposition of this tax are familiar and read in part as follows:

"A tax shall be and is hereby imposed upon the transfer of any property, real or personal, of the value of five hundred dollars or over, or of any interest therein  *  *  *  in the following cases:  *  *  *

"2. When the transfer is by will or intestate law, of property within the state, and the decedent was a non-resident of the state at the time of his death."

The present assessment is under the last clause, and as already intimated the sole question, stated in practical form, is whether the authorities of this state ought to levy a tax upon the full value of decedent's holdings, recognizing simply the New York corporation and regarding it as the sole owner of all of the property of the doubly incorporated New York-Massachusetts corporation, or whether they should limit the tax to a portion of the total value, upon the theory that the company holds its property in Massachusetts at least under its incorporation in that state.

By seeking the aid of our laws and becoming incorporated under them the consolidated Boston and Albany Railroad Company became a domestic corporation. (*Matter of Sage,* 70 N. Y. 220.)

The decedent, therefore, as the owner of Boston and Albany stock, may be regarded as holding stock in a domestic corporation, and it is so clearly settled that we need only state the proposition that capital stock in a domestic corporation, although held by a non-resident, will be regarded as having its situs where the corporation is organized, and is, therefore, taxable in this state. (*Matter of Bronson,* 150 N. Y. 1.)

There is, therefore, no question but that the decedent, holding stock in the Boston and Albany road, which was incorporated under the laws of this state, left "property within the state" which is taxable here. There is no doubt about the meaning of "property within the state," as applied to this situation, or that it justifies a taxation by our authorities of decedent's interest as a shareholder in the corporation created under the laws of this state. The only doubt is as to the extent and value of that interest for the purposes of this proceeding. For, although the tax is upon the transfer and not upon the property itself, still its amount is necessarily measured by the value of the property transferred, and, therefore, we come to consider briefly the nature of the stock here

assessed as property and the theory upon which its value should be computed.

The general nature of a shareholder's interest in the capital stock of a corporation is easily understood and defined. In *Plimpton* v. *Bigelow* (93 N. Y. 592) it is said that "The right which a shareholder in a corporation has by reason of his ownership of shares is a right to participate according to the amount of his stock in the surplus profits of the corporation on a division, and ultimately on its dissolution, in the assets remaining after payment of its debts."

In *Jermain* v. *L. S. & M. S. Ry. Co.* (91 N. Y. 483, 491) it was said: "A share of stock represents the interest which the shareholder has in the capital and net earnings of the corporation."

Therefore, since the shares of capital stock under discussion represented a certain interest in the surplus of assets over liabilities of the Boston and Albany Railroad Company, the value of that stock is to be decided by reference to the amount of property which said railroad company as incorporated in this state is to be regarded as owning for the purposes of this proceeding.

In the majority of cases at least a corporation has but a single corporate creation and existence under the laws of one state, and by virtue of such single existence owns all of its corporate property. There is no difficulty in determining in such a case that a shareholder under such an incorporation has an interest in all of the corporate property wherever and in how many different states situated. I shall have occasion to refer to that principle hereafter in another connection. Even in the case of a corporation incorporated and having a separate existence under the laws of more than one state, the stockholder would for some purposes be regarded as having an interest in all of the corporate property independent of the different incorporations. In the present case the decedent, by virtue of his stock as between him and the corporation, would be regarded as having an interest in all of its property and entitled to the earnings thereon when distributed as dividends

and to his share of the surplus upon dissolution and liquidation proceedings independent of the fact that there were two separate incorporations.

But, as it seems to me, different considerations and principles apply to this proceeding now before us for review. Our jurisdiction to assess decedent's stock is based solely and exclusively upon the theory that it is held in the Boston and Albany Railroad Company as a New York corporation. The authorities are asserting jurisdiction of and assessing his stock only because it is held in the New York corporation of the Boston and Albany Railroad Company. But we know that said company is also incorporated as a Massachusetts corporation and presumably by virtue of such latter incorporation it has the same powers of owning and managing corporate property which it possesses as a New York corporation. In fact the location of physical property and the exercise of various corporate functions give greater importance to the Massachusetts than to the New York corporation, and the problem is whether for the purpose of levying a tax upon decedent's stock upon the theory that it is held in and under the New York corporation we ought to say that such latter corporation owns and holds all of the property of the consolidated corporation wherever situated, thus entirely ignoring the existence of and the ownership of property by the Massachusetts corporation. It needs no particular illumination to demonstrate that if we take such a view it will clearly pave the way to a corresponding view by the authorities and courts of Massachusetts that the corporation in that state owns all of the corporate property wherever situated, and we shall then further and directly be led to the unreasonable and illogical result that one set of property is at the same time solely and exclusively owned by two different corporations and that a person holding stock should be assessed upon the full value of his stock in each jurisdiction. Whether we regard such a tax as is here being imposed, a recompense to the state for protection afforded during the life of the decedent or as a condition imposed for creating and allowing certain rights of

transfer or of succession to property upon death, we shall have each state exacting full compensation upon one succession and a clear case of double taxation.   And if the corporation had been compelled for sufficient reasons to take out incorporation in six or twenty other states each one of them might take the same view and insist upon the same exaction until the value of the property was in whole or large proportion exhausted in paying for the privilege of succession to it.   While undoubtedly the legislative authority is potent enough to prescribe and enforce double taxation, it is plain that, measured by ordinary principles of justice, the result suggested would be inequitable and might be seriously burdensome.

Double taxation is one which the court should avoid whenever it is possible within reason to do so.   (*Matter of James*, 144 N. Y. 6, 11.)

It is never to be presumed.   Sometimes tax laws have that effect, but if they do it is because the Legislature has unmistakably so enacted.   All presumptions are against such an imposition.   (*Tennessee* v. *Whitworth*, 117 U. S. 129.)

The law of taxation is to be construed strictly against the state in favor of the taxpayer as represented by the executor of the estate.   (*Matter of Fayerweather*, 143 N. Y. 114.)

It seems pretty clear that within the principles of the foregoing and many other cases which might be cited we ought not to sanction a course which will lead to a tax, measured by the full value of the decedent's stock, in each state upon the conflicting theories that the corporation in that state owns all the property of the consolidated company, unless there is something in the statute or decisions under the statute which compels us so to do.   I do not think there is in either place such compelling authority.

No doubt is involved, as it seems to me, about the meaning and application of the statute.   The decedent's stock was " property within the state," which had its situs here as being held in the New York corporation, and the transfer of it was taxable here.   There can be no dispute about that.   The

question is simply over the extent and value of his interest as such stockholder, in view of the other incorporation in Massachusetts. I see nothing in the statute which prevents us from paying decent regard to the principles of interstate comity and from adopting a policy which will enable each state fairly to enforce its own laws without oppression to the subject. This result will be attained by regarding the New York corporation as owning the property situate in New York and the Massachusetts corporation as owning that situate in Massachusetts, and each as owning a share of any property situate outside of either state or moving to and fro between the two states, and assessing decedent's stock upon that theory. That is the obvious basis for a valuation if we are to leave any room for the Massachusetts corporation and for a taxation by that state similar in principle to our own without double taxation.

Some illustrations may be referred to which by analogy sustain the general principles involved.

Where a tax is levied in this state upon the capital or franchises of a corporation organized as this railroad was, the tax is levied upon an equitable basis. Thus by the provisions of section 6 of chapter 19 of the Laws of 1869, under which the Boston and Albany railroad was organized, the assessment and taxation of its capital stock in this state is to be in the proportion " that the number of miles of its railroad situated in this state bears to the number of miles of its railroad situated in the other state," and under section 182 of the General Tax Law of the state of New York the franchise tax of a corporation is based upon the amount of capital within the state.

Again, assume that for purposes of dissolution or otherwise receivers were to be appointed of the Boston and Albany railroad, there can be no doubt that the receivers of it as a New York corporation would be appointed by the courts of that state, and the receivers of it as a Massachusetts corporation would be appointed by the courts of that state, and that the courts would hold that in the discharge of their duties the

New York receivers should take possession of and administer upon the property of the New York corporation within the limits of that state and would not permit the Massachusetts receivers to come within its confines and interfere with such ownership, and the Massachusetts courts would follow a similar policy.   Why should not the state authorities for purposes of this species of taxation and valuation, involved therein, adopt a similar theory of division of property?

We are not apprehensive lest, as suggested, New York corporations may take out incorporation in other states for the purpose of exempting transfers of their capital stock from taxation under the principles of this decision.  We do not regard our decision as giving encouragement to any such course.   It is based upon and limited by the facts as they are here presented, and there is no question whatever but that the Boston and Albany railroad, in good faith and for legitimate reasons, was equally and contemporaneously created both as a New York and a Massachusetts corporation.   It can no more be said that being originally and properly a New York corporation it subsequently and incidentally became a Massachusetts one than could be maintained the reverse of such proposition. If in the future a corporation created and organized under the laws of this state, or properly and really to be regarded as a New York corporation, shall see fit either for the purpose suggested, or for any other reason subsequently and incidentally and for ancillary reasons, to take out incorporation in another state, a case would arise not falling within this decision.

But it is said that this court has already made decisions which prevent it from adopting such a construction as I have outlined, and reference is made to *Matter of Bronson* (150 N. Y. 1) and *Matter of Palmer* (183 N. Y. 238).

I do not find anything in those decisions which, interpreted as a whole, with reference to the facts there being discussed, conflicts with the views which I have advanced.

In the first case the question arose whether a tax might be imposed upon a transfer of a non-resident decedent's residuary estate which " consisted in shares of the capital stock and in

the bonds of corporations incorporated under the laws of this
state." So far as the discussion relates to the question of tax-
ing the bonds it is immaterial. It was held that the shares of
capital stock were property which was taxable, it being said :
" The shareholders are persons who are interested in the oper-
ation of the corporate property and franchises, and their
shares actually represent undivided interests in the corporate
enterprise. The corporation has the legal title to all the
properties acquired and appurtenant, but it holds them for
the pecuniary benefit of those persons who hold the capital
stock. * * * Each share represents a distinct interest in
the whole of the corporate property." In other words, Judge
GRAY, in writing the majority opinion, was discussing the
situation of a shareholder in a domestic corporation which, so
so far as appears, was not incorporated under the laws of
another state. Under such circumstances, of course, the New
York corporation would be the owner of all the property
there was, and the shareholder's interest in such corporation
would represent his interest in all of said property and be
fairly and justly taxable upon its full amount and value. No
such situation was presented as here arises. There was no
second or third corporation under the laws of another state,
which corporation might just as fairly be said to be the owner
of all of the property as the New York corporation, thus rais-
ing the question here presented whether each corporation
should be regarded as owning and holding all of the property
there was for the purpose of laying the basis for taxation, or
whether we should adopt an equitable and reasonable view,
giving credit to each corporation for the purpose of taxation
of owning some certain portion of the entire property.

In the *Palmer* case again the question arose over taxing
shares of stock held by a non-resident 'decedent in a domestic
corporation which was not proved or considered to have been
incorporated under the laws of another state. It was insisted
that the amount of the tax should be reduced by the propor-
tion of property owned by the corporation and located in
other states, and this contention was overruled, and, as it seems

to me, for a perfectly good reason upon the facts in that case and which is not applicable to the facts here. As stated, there was a single incorporation under the laws of this state, and that domestic corporation owned all of the property in whatever state situated. Its corporate origin was under the laws of this state, and there its corporate existence was centered. It just as fully and completely owned and managed property situated in the state of Ohio as if it was situated in the state of New York, and if the property in the foreign state was reduced to money such money would be turned into its treasury in the state of New York. Under such circumstances there was nothing else that could reasonably be held than that the corporation owned all property wherever situated, and that the shareholder's interest in such corporation represented and was based upon such ownership of all the property. There was no double incorporation and no chance for conflict between an incorporation under the laws of this state and a second one existing under the laws of another state which must either be reconciled by a just regard for the rights of both states and the rights of the incorporation under each, or else double taxation imposed upon a shareholder.

It is also argued that the courts of Massachusetts have passed upon the very contention here being made by appellants, and in the case of *Moody* v. *Shaw* (173 Mass. 375) have rejected the claim that the valuation of stock in this same corporation for the purposes of transfer taxation in Massachusetts should be based upon any apportionment of property between the Massachusetts and New York corporations. The opinion in that case does not seem to warrant any such construction. Apparently the only question under discussion was whether the transfer of stock in said corporation was taxable at all in Massachusetts, and the question of any apportionment was not passed upon. Such expressions as are found in the opinion touching that point certainly do not indicate to my mind that if involved and passed upon it would have been decided adversely to the views here expressed.

Lastly, it is urged that there will be great practical difficulty

in making an apportionment of property for the purposes of valuation and taxation upon the lines suggested, and the learned counsel for the respondent has suggested many difficulties and absurdities claimed to be incidental to such course of procedure.    Most of them certainly will not arise in this case and they probably never will in any other.    Of course an appraisal based upon an apportionment of the entire property of the consolidated company between the New York and Massachusetts corporations may be made a source of much labor and expense if the parties so desire.    Possibly it might be carried to the extent of a detailed inventory and valuation of innumerable pieces of property.    Upon the other hand, an apportionment based upon trackage or figures drawn from the books or balance sheets of the company may doubtless be easily reached which will be substantially correct and any inaccuracies of which when reflected in a tax of one per cent upon 426 shares of stock will be inconsequential.

The order of the Appellate Division and of the Surrogate's Court of the county of New York should be reversed, with costs, and the proceedings remitted to said Surrogate's Court for a reappraisal of the stock in question in accordance with the views herein expressed.

CULLEN, Ch. J., GRAY, O'BRIEN, and EDWARD T. BARTLETT, JJ., concur; WERNER and CHASE, JJ., dissent.

Order reversed, etc.