but that the defendants were properly warned as to their rights, and that it was purely voluntary.

No error appears to have been committed upon the trial, and the judgment and order is affirmed.

(58 Misc. Rep. 117.)

### In re THAYER'S ESTATE.

(Surrogate's Court, New York County. February, 1908.)

TAXATION—TRANSFER TAX—RAILROAD STOCK—APPRAISAL.

    The capital stock of a railroad having lines in the state and also in adjoining states belonging to the estate of a nonresident decedent on appraisal should be apportioned, in determining the proportion of the property within the state, on the basis of total mileage, rather than on the mileage between terminal points, or on a valuation of all the property of the corporation or on a computation upon figures from the books and balance sheets of the company.

Appeal from Special Term.

In the matter of the estate of Julia B. Thayer. From an order determining the amount of a transfer tax on certain shares of stock, the executors and the Comptroller appeal. Comptroller's appeal overruled, and appeal of executors sustained in part.

Howland, Murray & Prentice, for appellant.

Charles M. Russell, for State Comptroller.

John M. Thornley, for executors.

Samuel Lewis, Jr., for Ada L. Fairfield and J. Grace Alexander.

BECKETT, S. Decedent died at her domicile, Keene, N. H., May 25, 1905, owning, among other properties, 1,714 shares of the capital stock of the Fitchburg Railroad Company and 8 shares of the capital stock of the Boston & Albany Railroad Company. This proceeding was instituted by the State Comptroller to determine the transfer tax. The first appraiser filed his report February 13, 1906, reporting the property above specified with other personal estate and appraising it at its full market value, the former at $144 per share, or $246,816, and the latter at $256 per share, or $2,048. The executors appealed from the formal order, and such proceedings were thereafter had (awaiting the decision of the Court of Appeals in Matter of Cooley's Estate, 186 N. Y. 220, 78 N. E. 939, 10 L. R. A. [N. S.] 1010) as resulted in an order of the surrogate, dated December 24, 1906, remitting the report to a second appraiser for reappraisal "and for the taking of further evidence herein in accordance with the decision rendered by the Court of Appeals in this state in Matter of the Estate of Francis B. Cooley, Deceased." The second appraiser retired from office without filing any report, and in February, 1907, a third appraiser was designated, who filed a report August 29, 1907, in which he reported that he had taken the mileage distance between the terminal points within and without the state as a basis. The Comptroller and the executors both appeal, the former upon the ground that the appraiser erred in failing to appraise the stock of the Fitchburg Railroad Company at its full market value. He would distinguish this case from

the Cooley Case upon the ground that the consolidation of the various companies which now constitute the Fitchburg Railroad Company was not effected by the contemporaneous action of the Legislatures of the different states in which the company was incorporated. But was that the real ground upon which the decision in that case stands? It would seem that the reasoning of the Cooley Case is that, in view of the fact of the incorporation of the Boston & Albany Railroad in both Massachusetts and New York, if it were just to tax its stock at full value in the state of New York, it would certainly with equal justice be maintained that it should also be taxed at its full value in the state of Massachusetts, and thereby double taxation would result, which the courts should avoid whenever reasonably possible. Matter of Cooley's Estate, 186 N. Y. 227, 78 N. E. 939, 10 L. R. A. (N. S.) 1010; Matter of James, 144 N. Y. 6, 11, 38 N. E. 961. To tax the stock of the Fitchburg Railroad Company at its full value in New York, and to tax it again at its full value in Massachusetts, and again in Vermont, and yet again in New Hampshire—in which four states it is incorporated—would certainly be a possibility not sanctioned by the doctrine of the Cooley Case.

The executors have appealed on the following, among other, grounds: (1) That so much of said tax as exceeds 23.01 per cent. of the value of the Fitchburg Railroad Company stock is invalid, void, and unconstitutional, in that it appears that said railroad is a consolidated corporation organized and incorporated under the laws of the states of Massachusetts, New York, Vermont, and New Hampshire, and that it appears that the proportion of the said shares representing property within the state of New York is 23.01 per cent., and no more; and (2) a similar appeal as to so much of the tax as exceeds 18.37 per cent. of the value of the Boston & Albany stock. Both parties seemingly agree that the Court of Appeals, although it has decided in the Cooley Case that an apportionment is proper, has not as yet laid down or approved a definite rule for such apportionment. Matter of Cooley's Estate, 186 N. Y. 231, 232, 78 N. E. 939, 10 L. R. A. (N. S.) 1010. Each litigant advocates a different rule, and upon the one to be adopted this appeal will turn. If any fair, common-sense rule of proportion may be taken, it is manifest that much saving may be had both to the state and the people, who still commonly think that they themselves pay this tax. If, on the other hand, we shall adopt a rule of mathematical refinement and exact nicety, and "to the extent of a detailed inventory and valuation of innumerable pieces of property," we may be sure that the proceedings "may be" (and will be) "made a source of much labor and expense." Each railroad system has something characteristic about its individual formation. What court could decide what are the real termini of the Boston & Maine Railroad? The map submitted in the brief of the executors of the Fitchburg Railroad in the state of New York illustrates this point. If the termini are the great cities, then Troy is the New York terminus. If extreme length of line, including so-called "branches," makes the terminal, then probably Saratoga Springs or Schuylerville, according to their relative distance, may be it. As a matter of fact the Fitchburg

Railroad has but one terminus—Boston—and the entire system as a whole is a feeder stretching out toward the west to Troy and Rotterdam Junction, toward the north to Bellows Falls, Vt., and toward the south to Worcester, Mass., and we must look along the lines it feeds to Buffalo, Montreal, and New York for other terminals. This system, taken as a whole, affords convenient communication not only between Boston and Troy, but also between Worcester, Mass., and Bellows Falls, Vt., by way of Keene, N. H., and also by separate lines to Peterborough, Greenfield, and Milford, N. H. Operated with its present connections portions of its tracks become essential links in direct line communication from Boston to Montreal and Quebec, from Boston to New York via Northampton, Springfield, and Hartford, and its so-called branches are also in thickly populated localities in New England, and must necessarily be of great value to the company. It has leased its property to the Boston & Maine Railroad upon such terms that the clear market of its stock was worth, at the date of the death of decedent, $144 per share. Now, in the broad sense, no separate portion of its track is a thing by itself, made for separate and special use. The value of any several portion of it (independent and separate from the whole) is incapable of exact determination. Each part has its place in contributing to the value of the whole, and this is true even if the several parts are each of small value in and by itself. Such portion of the road as lies in the state of New York might never have been constructed except to connect with the road passing through Vermont and into Massachusetts, and the system would also suffer if deprived of its New Hampshire connections. An attempt to place an accurate value on the several parts may be likened to the fanciful speculations as to the comparative value to the healthy man of his hand, his foot, his eye, or his stomach. As to the portion of the track in the state of New York, no special circumstance exists respecting its value save that it permits direct communication with a great terminus. Much of its value must be derived from the fact that it feeds the track of other roads exclusively chartered by the state of New York, from Boston to Buffalo, and thence to the west, and from Boston to New York through Troy.

I am of opinion that the total mileage method works the most substantial justice, and is the best working hypothesis upon which to arrive at the proper apportionment. Branch lines are then taken into account as elements of value. The decedent's stock in the Fitchburg Railroad derives some increment of its value from every branch, spur, siding, and switch of that railroad system. From the nature of things total mileage more nearly approximates the larger and real value: for instance, the Fitchburg Railroad runs through the town of Greenfield, Mass. The value of the property of the railroad in that locality is naturally large, but the main line runs through that town no differently than through the wilderness or the swamp, in both places being a mere suggestion of lineal measure; whereas, accumulated at Greenfield, for the very reason that it is a city requiring business facilities, are miles of double tracks, side tracks, sidings, and switches, all of which will completely figure forth in the total mileage of the Fitchburg

110 N.Y.S.—48

Railroad. A switch is added to a railroad to make it a more perfect instrument, with an idea of making it earn more money, and naturally expresses increased value. I am also inclined to believe that total mileage reflects the value of the rolling stock and also the real and personal property at the various stations and depots along the line much more accurately than main line mileage. Total mileage can always be readily ascertained from the annual reports and when necessary by affidavits where, intermediate the annual report and the death of a decedent, considerable extensions shall have been made.

The gross track mileage of the Fitchburg Railroad system is 781.17 miles, of which 215.18 miles are within the state of New York. It owns in Boston and Somerville, Mass., wharves, grain elevators, and connecting tracks (a marine terminal) which are outside of and apart from the ordinary freight and passenger terminals. The value of this special property, $1,812,000, should be deducted from the total capital before apportioning the capital stock on a mileage basis. Pittsburgh, C., C. & St. L. R. R. Co. v. Backus, 154 U. S. 421, 14 Sup. Ct. 1114, 38 L. Ed. 1031. It results, therefore, that a share of stock of the Fitchburg Railroad Company on the basis of a valuation of $144 per share represents property in the state of New York of the value of $36.73. The facts relating to the Boston and Albany Railroad stock are similar, and the principle applicable thereto is the same. Applying this principle to the total mileage, a share of Boston & Albany stock, at a valuation of $256 per share, the value at the date of the death of the decedent represents property in the state of New York of the value of $47.02. Counsel for the Comptroller contended that the rule of apportionment should be based upon the "main line mileage." The appraiser adopted this rule intimating that he was following the suggestions of the court in the Cooley Case. I do not understand that the Court of Appeals adopted a specific rule as to such apportionment, but that it is suggested in that case, notwithstanding that "the learned counsel for the respondent (here also representing the Comptroller) has suggested many difficulties and absurdities claimed to be incidental to such course of procedure," that such an apportionment might possibly be had (1) upon an apportionment of the entire property between the various states by means of a "detailed inventory and valuation of innumerable pieces of property"; or (2) "upon trackage" which I do not interpret, as the appraiser seems to have done, to mean "main line mileage"; or (3) upon "figures drawn from the books or balance sheets of the company." It seems to me that the latter method, as applied to the facts in the present case, is as objectionable as the detailed inventory plan would be on the score of its complexity and expense, and such accounts are also supposed to represent the cost and not the value, and that, too, possibly, at an ancient date. Moreover, we look askance in these days at a corporation's construction account, which often seems to welcome items scarcely germane to original value, betterments or additions. Counsel for the Comptroller's definition for "main line mileage" is "the geographical distance between the terminals within the state, as compared to those without the state, measured along the line of the railroad." But who is to select

the real terminals? Indeed, that trouble argues against his theory in the very matter at bar. The Comptroller contended for one terminus in the state of New York for the Fitchburg Railroad and the executors for another. And what shall we do with active, prosperous, remunerative branches running, let us say, up to Saratoga Springs? How shall we dispose, in justice, of its lines from Worcester, Mass., to Bellows Falls, Vt.? And, if our Fitchburg Railroad happened to have quadruple tracks from Rotterdam Junction to the Vermont state line and single track thence to Boston, what would the Comptroller say then? Is it possible that parts of an east and west line can ever be a true mathematical basis of proportion as to unlimited, irregular, and indefinite branching and crossing northerly and southerly lines?

The Comptroller's appeal should be overruled, and the appeal of the executors should be sustained to the extent hereinbefore set forth. Submit order upon notice accordingly. Decreed accordingly.