THE PEOPLE OF THE STATE OF NEW YORK ex rel. GEORGE F. ANDREWS and GURDON H. PUMPELLY, as Temporary Administrators, etc., of FREDERICK C. HEWITT, Deceased, and as Executors, etc., of FREDERICK C. HEWITT, Deceased, Respondents, Appellants, *v.* DEL REY A. CAMERON and Others, Assessors of the Village of Owego, Tioga County, New York, Appellants, Respondents.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. GEORGE F. ANDREWS and GURDON H. PUMPELLY, as Executors, etc., of FREDERICK C. HEWITT, Deceased, Respondents and Appellants, *v.* HARRY B. TILBURY and Others, Assessors of the Town of Owego, Tioga County, New York, Appellants and Respondents.

Third Department, September 14, 1910.

Tax — property bequeathed to foreign educational corporation — exemption not favored — property bequeathed to society for the prevention of cruelty to animals — future commissions of executors not taxable — property of legatees exempt from taxation transferred to settle will contest — division of taxable and non-taxable securities.

Property bequeathed to a university organized under the laws of a foreign State exclusively for educational, scientific and literary purposes is, before payment to the beneficiary, liable to taxation in the town or village of the testator's residence even though the property would be exempt from taxation if the beneficiary were organized under our laws.

Such foreign beneficiary can claim no exemption from taxation here on account of the laws of the foreign State.

Exemptions from taxation are not favored and are to be strictly construed.

Property bequeathed to the American Society for the Prevention of Cruelty to Animals, organized under chapter 469 of the Laws of 1886, is exempt from taxation under the clause of the Tax Law relating to corporations organized exclusively for the enforcement of laws relating to children and animals.

Executors' commissions not yet ascertained and due are not subject to taxation.

Where a beneficiary exempt from taxation agrees to pay a portion of the bequest to a relative of the testator in consideration of the withdrawal of her objections to the probate of the will, the amount payable to her is not subject to taxation by the town or village where the testator resided until after the title passes, and then it is only taxable against her individually at the place of her residence.

Where certain portions of an estate are invested in securities exempt from taxation and some of the legatees are liable to taxation and some are not, each legatee should be charged with the same proportionate amount of taxable and non-taxable securities.

KELLOGG, J., dissented, with opinion.

CROSS-APPEALS by the defendants and the relators in each of the above-entitled proceedings from a final order of the Supreme Court, made at the Chenango Special Term and in each case entered in the office of the clerk of the county of Tioga on the 14th day of April, 1910, the defendants' appeals being from the whole of such orders respectively, and the relators' appeals being from certain parts thereof.

*F. W. Clifford*, for the relators.

*William Nelson Noble* and *Fred J. Davis*, for the defendants.

In each case order appealed from affirmed, without costs to either party, on the opinion of Mr. Justice LYON at Special Term.

All concurred, except KELLOGG, J., dissenting in memorandum.

The following is the opinion delivered at Special Term:

LYON, J.:

These are proceedings by certiorari to review the assessments of the relators in the village of Owego, and in the town of Owego, which embraces the village of Owego, for the year 1909. The facts are conceded.

Frederick C. Hewitt, a resident of said village and town, died at his home August 30, 1908. He left a will, made the preceding March, which disposed of personal property aggregating approximately $5,500,000, and of real estate of the value of about $20,000. The will directed his executors to convert his whole estate into money, and bequeathed the proceeds from such sale to various persons and corporations named. So far as is material to be considered in this proceeding the will gave to relatives $310,000, to employees $2,200 and to the widow of a deceased cousin a legacy for life of the cash value of $3,198 — a total of $315,398; to the Society for the Prevention of Cruelty to Animals of New York city $10,000, to Yale University $500,000, and to various hospitals, industrial schools, charitable and educational institutions the balance of the estate, with the Metropolitan Museum of Art the residuary legatee.

Upon the will being offered for probate in September, 1908, objections were filed by Mrs. Arnot, a sister of the testator, and on October 3, 1908, the relators were appointed temporary administrators.

Hearings were had before the acting surrogate, who, at the close of the contestant's evidence, denied the motion made by proponents for the admission of the will to probate. Pending an adjournment an agreement was entered into between the contestant, nearly all the corporate legatees and the executors, of date June 19, 1909, by which agreement Mrs. Arnot was to receive from the executors out of the cash proceeds resulting from the sale of personalty belonging to the estate the sum of $1,200,000 in cash, together with said real estate and certain household property, in consideration of which she was to withdraw all objection to the probate of the will, and was to satisfy the $310,000 of legacies to relatives.

The executors thereby agreed to distribute the estate as soon as practicable, and at least to the extent of the specific legacies, not later than October 1, 1909, upon making which distribution they were to receive full commissions, based upon the amount distributed, and the contestants and legatees had the right to require payment in bonds or stock of the estate as listed on the New York Stock Exchange July 14, 1909.

The will was admitted to probate and letters testamentary duly issued to relators June 24, 1909. The agreement above mentioned was carried out July 27, 1909, by the delivery of instruments required by the agreement to be executed by the next of kin and heirs at law of the testator, and by the payment of the moneys and the transfer of the property required by said agreement to be made to Mrs. Arnot. Such payment and transfer were made by the executors under the written authorization of said corporate legatees, out of their interests in the estate, each of said corporate legatees contributing twenty-five per cent of the amount of its legacy to make up the sum required for such payment. Each contributing legatee was concededly exempt from taxation unless it be Yale University and the Society for the Prevention of Cruelty to Animals.

The executors, upon making the distribution called for by the agreement, were paid their commissions, amounting to approximately $110,000.

The assessment roll of the village of Owego was made as of May first, and that of the town of Owego as of July first. Upon the village roll the said temporary administrators were assessed for real estate $20,250, and for personal property $2,500,000, which upon griev-

ance day was reduced to $1,833,845.70.   Upon the town roll the executors were assessed for real estate $20,450, and for personal property $1,500,000, which upon grievance day was increased to $1,723,845.70.   The difference of $110,000 between the amounts of the assessments for personal property upon the two rolls represented the amount claimed by the assessors to be the commissions of the executors, to whom, as above stated, letters testamentary were issued between the dates of the completion of the rolls.   The valuation of the personal property upon the village roll was made up of the legacies to relatives, employees and the life income, aggregating $315,398, as before stated; the legacy of $10,000 to the Society for the Prevention of Cruelty to Animals; the executors' commissions of $110,000; $400,000 of the legacy to Yale University; $1,018,697.70 received by Mrs. Arnot under the agreement of June 19, 1909, which latter sum was made up of cash and personal property paid and transferred to her to the amount of $998,447.70, and said real estate conveyed to her of the value of $20,250.

Each party to the proceeding concedes that the legacies amounting to said sum of $315,398 were not exempt from taxation, but the parties disagree as to the exemption from taxation of the bequest to Yale University; of the bequest to the Society for the Prevention of Cruelty to Animals; of the commissions paid to the executors, and of the money and property paid and transferred to Mrs. Arnot.

By statute* all real property within this State and all personal property situated or owned within this State is taxable, unless exempt from taxation by law.

Property may be exempt from taxation by reason of its ownership by a person or corporation exempt by law from taxation, or by reason of the nature of the property itself.

Included in the property exempt by law by reason of ownership is the real property of a corporation or association organized exclusively for the moral or mental improvement of men or women, or for charitable, educational, scientific or literary purposes, or for the enforcement of laws relating to children or animals, and used exclusively for carrying out thereupon one or more of such purposes,

* See Tax Law (Consol. Laws, chap. 60; Laws of 1909, chap. 62), § 3.— [REP.

" and the personal property of any such corporation shall be exempt from taxation."*

The real property has not at any time been used exclusively, or even in part, for carrying out thereupon any of the purposes specified by the statute as necessary in order to exempt it from taxation, and hence the assessment thereof was proper.

Concededly, Yale University is a corporation organized under the laws of the State of Connecticut exclusively for educational, scientific and literary purposes, exempt from taxation under the laws of that State, and would be exempt from taxation in this State if organized under the laws of this State. ·The single question, therefore, is whether the benefit of our tax exemption laws applies to non-resident educational institutions, or whether such benefit is confined to educational corporations organized and existing under the laws of New York State. I am of the opinion that the bequest to ·Yale University is subject to taxation.

It can claim no exemption here from taxation on account of any laws of the State of Connecticut, as such laws have no operation here. (*People ex rel. Savings Bank* v. *Coleman*, 135 N. Y. 231.) . While the statute is broad and exempts the personal property of " any " such corporation, it is also broad in providing that " all " personal property situated or owned within this State is taxable " unless exempt from taxation by law."

Exemptions from taxation are not favored and are to be strictly construed. They will not be sustained unless such clearly appears to have been the intent of the Legislature. An exemption from taxation must be expressed in clear and unambiguous language, and appear to be indisputably within the intention of the Legislature. As was said by Chief Justice Marshall in *Providence Bank* v. *Billings* (4 Pet. 561): " The taxing power is of vital importance. * * * It would seem that the relinquishment of such a power is never to be assumed. · * * * Its abandonment ought not to be presumed in a case in which the deliberate purpose of the State to abandon it does not appear." (*Yazoo & Mississippi Valley R. Co.* v. *Adams*, 180 U. S. 1; *People ex rel. Westchester F. I. Co.* v. *Davenport*, 91 N. Y. 574.)

A long list of authorities in this and other States might be cited

---

* See Tax Law, § 4, subd. 7.— [Rep.

supporting the proposition that the presumption is against exemption from taxation, and that the right to exemption must be clearly established before privilege can be availed of under claim of exemption. In *People ex rel. Savings Bank* v. *Coleman* (135 N. Y. 231) it was said : " The general rule is that all property within this State is liable to taxation, and when a claim of exemption is made it must clearly appear, and the party claiming it must be able to point to some provision of law plainly giving the exemption."

Bearing in mind the rule that the burden of proving exemption is upon the party asserting it, can it be said that it was the legislative intent to exempt from taxation the personal property within this State of a non-resident or foreign educational corporation, as well as that of a domestic corporation ? Strangely indeed we look in vain for an authoritative decision by the courts of our State directly upon the question, unless it be in *Matter of Estate of Prime* (136 N. Y. 347), in which it was held that under the Collateral Inheritance Act* in terms exempting " any " educational corporation from the payment of an inheritance tax, such exemption did not apply to a foreign corporation but to a domestic corporation only. The court said : " We are of opinion that a statute of a State granting powers and privileges to corporations must, in the absence of plain indications to the contrary, be held to apply only to corporations created by the State, and over which it has the power of visitation and control. Such is the natural interpretation of such legislation, in the absence of a contrary intention appearing on the face of the act. The Legislature in such cases is dealing with its own creations, whose rights and obligations it may limit, define and control. * * * The argument that gifts for the promotion of charity, education and religion should be encouraged and should not be diminished by exactions of the State, presents a moral and political rather than a judicial question. * * * It is the policy of society to encourage benevolence and charity. But it is not the proper function of a State to go outside of its own limits and devote its resources to support the cause of religion,

---

* See Laws of 1885, chap. 483, § 1, as amd. by Laws of 1887, chap. 713, and Laws of 1891, chap. 215. See, also, Laws of 1889, chap. 191, § 1, as amd. by Laws of 1890, chap. 553.— [REP.

education or missions for the benefit of mankind at large. The argument may have force, that the State might, consistently with its proper function give immunity from taxation to some of the foreign corporations engaged in the work of education or charity. But however this may be, we are convinced that the statute of 1891 has no application to foreign corporations, and having reached that conclusion our duty is ended."

While in the case cited the bequest was to a board of foreign missions, rather than to a corporation of another State, and the decision related to the liability for the payment of a collateral inheritance tax rather than of a general tax, as to which the respondents' attorneys seek to draw a distinction, yet I cannot see why the reasoning of the decision is not at least equally applicable to the case at bar. Indeed, the distinction is adverse to the contention of the respondents, as it was held in *Matter of Mergentime* (129 App. Div. 367) that a clear legislative intention to subject the legatee to the tax must appear where the tax imposed is a special tax, while where it is a general tax, exemption from taxation must be strictly construed against the legatee claiming it, and if the exemption is not plainly expressed it will not be presumed.

The Supreme Court of Illinois, in the case of *People* v. *Seaman's Friend Society* (87 Ill. 246), held that a statute of that State exempting from taxation all property of institutions of public charity, must be understood to have exclusive reference to institutions or corporations created by the laws of the State of Illinois and not to foreign corporations, and hence that a charitable institution of the State of Ohio was not exempt from taxation for property situated within the State of Illinois.

In the examination of this question, I have not overlooked the savings bank cases (*People ex rel. Savings Bank* v. *Coleman*, 135 N. Y. 231; *People ex rel. Groton Savings Bank* v. *Barker*, 154 id. 122; *People ex rel. Newburgh Savings Bank* v. *Peck*, 157 id. 51), cited by relators. The decisions in those cases were based upon the provisions of the statute* exempting "the deposits in any bank for

---

* See Laws of 1857, chap. 456, § 4; Tax Law (Gen. Laws, chap. 24; Laws of 1896, chap. 908), § 4, subd. 14; since amd. by Laws of 1901, chap. 618, and revised into Tax Law (Consol. Laws, chap. 60; Laws of 1909, chap. 62), § 4, subd. 14.— [Rep.

savings which are due to depositors." The case first cited held that the surplus was taxable, while the other two cases held that in equity the surplus belonged to the depositors and hence was exempt from taxation for that reason. Neither case is an authority upon the proposition contended for by relators.

As to the liability to taxation of the legacy of $10,000 to "The Society for the Prevention of Cruelty to Animals." As before stated, the Tax Law (§ 4, subd. 7) exempts from taxation the real and personal property of any corporation or association organized exclusively for the enforcement of laws relating to children or animals. Chapter 469 of the Laws of New York for 1866 incorporates "The American Society for the Prevention of Cruelty to Animals." I think that under the wording of the act of incorporation it must be held that this legatee is within the provisions of the Tax Law, and hence exempt from taxation.

The third question for examination is as to the legality of the assessment on account of executors' commissions. No commissions have been paid to the temporary administrators, and letters testamentary had not been issued to the executors at the time the assessment was made on the village roll, May first. No commissions belonged to the representatives of the estate until they had performed the duties of their office, and until such commissions had been ascertained and liquidated upon the settlement of their accounts. Up to that time the right of the temporary administrators or executors to commissions was simply inchoate and unassignable. (*Matter of Worthington*, 141 N. Y. 9.)

Frequently estates are not closed until after the expiration of many years from the time of the issuing of letters testamentary or of administration, and to assess the representatives and compel them to pay taxes year after year upon commissions which they may receive in the indefinite future, or perhaps may never receive, would hardly seem to be warranted. Furthermore, the commissions were payable out of the residuary estate, which in this case was exempt from taxation. Were the residuary estate taxable, taxing the commissions also would be double taxation.

The most material question for determination is as to whether the money and property transferred to Mrs. Arnot were properly

included in the assessment. I am of the opinion that they were exempt from taxation.

The title to all the property, real and personal, of Frederick C. Hewitt vested in the legatees at the moment of his death. A bequest to a corporation exempt from taxation was not taxable so long as the ownership of the property bequeathed remained in such corporation. (*People ex rel. Crook* v. *Wells,* 179 N. Y. 257; *People ex rel. Gould* v. *Barker,* 150 id. 52; *Matter of Ramsdill,* 190 id. 492.)

The assessors claim, however, that the twenty-five per cent of the exempt legacies which were paid and transferred to Mrs. Arnot are taxable. But she received nothing whatever under the will. The property which she received was the property of various legatees paid and transferred to her by their voluntary acts. The payments made to Mrs. Arnot were made to her by the executors out of the moneys and property of various legatees in their hands, pursuant to the written authorization and direction of such legatees who receipted to the executors for such payments as payments made to them. The executors at no time held property belonging to Mrs. Arnot. It did not become hers nor the title thereto pass from the exempt legatees until paid over to her, which was after the making of both the village and town assessments. If then taxable, it was taxable at her place of residence against her individually.

The question as to the exemption from taxation of the money and property paid and transferred to Mrs. Arnot cannot be considered an open one, since the decision in *Matter of Cook* (187 N. Y. 253), in which it was held that property transferred by legatees in settlement of a contest of a will passed under the assignment and not under the will, and was taxable under the Transfer Tax Act* at the rate fixed, as to the assignor and not as to the assignee. This decision reversed that of the lower court holding that the compromise must be considered a renunciation by the legatees.

Having reached the conclusion that the bequests to relatives, employees and for the life estate, aggregating $315,398, and the bequest to Yale University of $500,000, are taxable, and that the bequest to the Society for the Prevention of Cruelty to Animals of

* See Tax Law, art. 10.— [REP.

$10,000, and the commissions of the temporary administrators of $110,000, and the payments and transfer to Mrs. Arnot aggregating $1,018,000, are exempt from taxation, the single question which remains to be determined is as to the amount at which these taxable bequests should be assessed. No question is raised as to the inequality of assessment, nor as to any illegality upon the part of the assessors, in case the bequests are assessable.

It appears from the record that the value of the personal property of the estate was $5,500,000, and that $2,365,157 thereof was in securities which were exempt from taxation. Thus fifty-seven per cent of the property of the estate was taxable, and forty-three per cent non-taxable because of the nature of the property.

The relators contend that the taxable securities and non-taxable securities should be ratably apportioned between the various legatees to the amounts of their respective legacies in the proportion above mentioned of taxable and non-taxable securities. It cannot be said that Yale University, or any legatee, was vested of the ownership of any particular block of stock or bonds. It would hardly be fair to the legatees, whose bequests are taxable, to hold that such legacies must be deemed to be payable wholly in taxable securities, nor fair to the assessors to hold that the taxable legacies must be deemed to be payable wholly in non-taxable securities. Fairness to both the taxable legatees and assessors would seem to require that each legatee be charged with the same proportionate amount of taxable and non-taxable securities, all of which, under the direction of the will, were to be converted into money and thus distributed.

An analogous principle of apportionment was applied in *Matter of Ramsdill* (190 N. Y. 492), in which the court held that the debt of a non-resident, dying intestate, leaving assets in the place of his domicile, and also in this State, should be deducted from the assets in proportion to the percentage thereof in each State. The same principle was also applied in *Matter of Cooley* (186 N. Y. 220) and *Kingsbury* v. *Chapin* (196 Mass. 533).

The conclusions follow from the views above expressed that the assessment of the relators in the village of Owego should be reduced from the sum of $1,833,845.70 to the sum of $464,776.86, and that the assessment in the town of Owego should be reduced from $1,723,845.70 to the same sum.

Third Department, September, 1910.　　　　[Vol. 140.

Findings in accordance herewith may be prepared and, submitted by relators' attorneys.

The following is the dissenting opinion in the first proceeding :
KELLOGG, J. (dissenting) :

The village assessment roll was made as of May first and completed June first, the review day was June twenty-fourth, and the final hearing of the executors before the assessors was July nineteenth. Upon July twenty-sixth the assessors modified the assessment.of the executors and fixed it at $1,833,845.70. Until the settlement agreement of June nineteenth it was uncertain who were beneficially interested in the property held by the executors. Mrs. Arnot claimed it as next of kin ; certain corporations claimed it as legatees ; it was uncertain whether an effectual will had been made or not and that matter was on trial before the court. At the time of the hearing before the assessors it was definitely known who was interested in the estate, and it was clear that Mrs. Arnot and those she represented were the sole beneficiaries in $1,200,000 of the trust funds, and that she owned also the household property, and on the twenty-sixth day of July the assessors completed the assessment by reducing it to the amount payable to Mrs. Arnot and those she represented, Yale University and some other amounts which are not questioned.

The executors held title to the property, not only by the will and its probate, but also by an assignment from the next of kin. The probate of the will was brought about by an agreement which provided in substance that the next of kin should assign their interest in the estate to the executors for distribution pursuant to the terms of the will. The agreement of the next of kin to assign preceded the probate of the will. The interest of all the parties, therefore, stands upon the will and the settlement, treating them as an entirety. The executors and all the parties interested may defend their title by the will and also by the assignment from the next of kin. The executors were properly assessed for the taxable money and property in their hands on the day the assessment was made, unless it is shown that the tax-exempt corporations are the beneficiaries of the fund ; the party attacking the assessment must establish its invalidity. It could not be said at the time the assessment was made that tax-

exempt corporations were the sole beneficiaries of the fund held by the executors, and upon review day, when the assessment was completed, it was entirely plain that so far as the trust fund was assessed it was owned by persons subject to taxation.

For these reasons, and the reasons stated in my memorandum relating to the town assessment of this same estate, I consider the assessment properly made and favor a reversal of the order.

The following is the dissenting opinion in the second proceeding:

KELLOGG, J. (dissenting):

By the terms of the will the executors were to convert all the personal property into money and distribute the same among the legatees named. The tax-exempt character of the legatees is entirely immaterial so far as the moneys payable to Mrs. Arnot are concerned, for the reason that prior to July first, the day upon which the assessment was made, the legatees had parted with their interest in the $1,200,000, and Mrs. Arnot and those she represented were the only persons beneficially interested therein. The executors held on the day of the assessment a trust fund which contained money and taxable securities in an amount much larger than the amount of the assessment. July twenty-seventh, before review day, the executors had actually paid over to Mrs. Arnot the $1,200,000, of which $579,637.53 was in money, $303,125 in railroad bonds, and the remainder in railroad stocks. The party complaining of the illegality of an assessment must establish the fact. Considering the situation on the day of the assessment and review day, the assessors were justified in saying that the interest held in trust for Mrs. Arnot and the persons she represented was taxable. The receipt given by her indicates clearly that the tax-exempt corporations are not prejudiced by this assessment, and that she is the real party interested. She is apparently using the tax-exempt character of the corporations to escape taxation upon her property. In my judgment the assessment was properly made, and I favor a reversal of the order.